UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LISA A. SMITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security )<br>)<br>Defendant. ) | No. 1:14 CV 37 DDN |

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Lisa Smith for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the court affirms the decision of the Administrative Law Judge (ALJ).

**I. BACKGROUND**

Plaintiff was born September 24, 1970. She completed high school in 1989. Plaintiff has an uninterrupted work history from 1995 through 2007 as an assembly line worker, a binary printer, a retail cashier, and a secretary. (Tr. 163.) Plaintiff currently lives with her husband and two children; her husband is the only individual employed in the household. (Tr. 550.) On October 7, 2010, plaintiff filed her application under the Act for disability insurance benefits alleging a disability onset date of April 13, 2007. (Tr. 11, 101, 133.) Plaintiff alleges the following severe impairments: back and spine conditions, numbness in the right leg and arm, anxiety, a thyroid condition, and high cholesterol. (Tr. 162.)

Plaintiff's application was denied initially, and thereafter she requested a hearing before an ALJ. (Tr. 8, 39.) On January 29, 2013, following a hearing, the ALJ denied plaintiff's

application. (Tr. 8-25.) On January 31, 2014, the Appeals Council denied plaintiff's request for review. Therefore, the decision of the ALJ is the final decision of the Commissioner. (Tr. 1-5.)

## II. MEDICAL AND OTHER HISTORY

### A. Physical Health

On September 28, 2006, plaintiff saw M. Jeffery McNabb, D.O., her primary care physician for reported back pain. Dr. McNabb noted that plaintiff experienced relief from her back pain from chiropractic treatment. However, Dr. McNabb stated that, if chiropractic procedures fail to relieve her pain, plaintiff would need an MRI and possibly an injection. (Tr. 303.) Between November 2008 and February 2010 plaintiff visited Perryville Chiropractic twelve times for her back pain. (Tr. 203-219.)

On July 12, 2010, Dr. McNabb noted that plaintiff had been non-compliant with medications. Dr. McNabb "once again encouraged [plaintiff] to discontinue smoking." (Tr. 260.) On August 24, 2010, plaintiff visited Dr. McNabb regarding complaints of low back pain, and he scheduled an MRI for September, 9 2010. (Tr. 252.) The September 9, 2010, MRI revealed degenerative disc disease and mild narrowing of space at L3-4 and grade 2 anterolisthesis (a condition in which the upper vertebral body slips forward onto the vertebra below) at L4 on L5. This was due to bilateral defects with mild spinal stenosis and severe bilateral neural foraminal stenosis (narrowing of the cervical disc space) with L4 and L5 nerve encroachment. (Tr. 225.)

On October 6, 2010, Dr. Steele administered an epidural steroid injection in plaintiff's lumbar spine in order to ease her lower back and right leg pain. (Tr. 236). However, twelve days later plaintiff reported to Dr. McNabb that the epidural injection had not alleviated the pain in her right leg, and that the pain was increasing. Based on this information Dr. McNabb referred plaintiff to Robert J. Bernardi, M.D., for neurosurgical evaluation. (Tr. 240.)

On November 2, 2010, plaintiff had her initial meeting with neurosurgeon Bernardi. Plaintiff reported pain in her lower back, right buttock, and right leg. This pain required her to change positions frequently. (Tr. 337.) X-rays showed degenerative disc disease (a general condition which causes back pain) and isthmic spondylolisthesis (a condition in which one

vertebra slips unto the one below[1]). Dr. Bernardi advised plaintiff about fusion surgery and stated that the recovery from the procedure would take many months, and that she needed to commit to allowing the fusion to heal.  To that end, he told her it was imperative that she stop smoking prior to surgery, because smoking is a known risk factor for developing a nonunion. (Tr. 339.) Dr. Bernardi reported that plaintiff smoked a pack of cigarettes a day. (Tr. 337.)

A November 5, 2010, cervical MRI revealed plaintiff's developmentally narrow central spinal canal, right C5-6 medial foraminal disc herniation with encroachment, moderate C3-5 central spinal canal stenosis due to disc protrusions, and mild C2-3 congenital central spinal canal stenosis. (Tr. 228.)  Dr. McNabb referred plaintiff to Jeffrey S. Steele, M.D.  (Tr. 234.)

On November 23, 2010, plaintiff was examined by Shahrdad Khodamoradi, M.D., who advised that she was a good candidate for lumbar decompression and fusion surgery.  (Tr. 361.) The same day plaintiff also met with Dr. Bernardi; she reported no change in her lower back or right leg pain.  Dr. Bernardi noted that plaintiff had cut down to from one and a half or two packs per day to three cigarettes per day.  Dr. Bernardi stated that plaintiff "understands that it is imperative for her to stop [smoking] completely before her surgery date."  (Tr. 353.)

On December 13, 2010 Dr. Bernardi performed spinal fusion surgery on plaintiff.  The procedure was completed without complications. (Tr. 375-77.) Plaintiff was discharged from the hospital on December 16, 2010, with instructions not to lift any objects greater than ten to fifteen pounds or perform any activities which involve repetitive bending or twisting.  Plaintiff was further instructed that she may walk or use a stationary bicycle, but she should not engage in formal exercise or a physical therapy program.  (Tr. 370.)

Plaintiff had nine post operation visits with Dr. Bernardi to assess the results of her spinal surgery.  (Tr. 412-25.)   The initial reports generally stated plaintiff was "doing very well" following surgery.  (Tr. 412, 414, 415.)  By March 9, 2011, plaintiff was cleared to lift up to thirty pounds.  (Tr. 414.)  Dr. Bernardi continued to urge plaintiff to quit smoking cigarettes, believing continued smoking "is her single greatest risk factor for developing a pseudoarthrosis [a failed union]." (Tr. 417); (see also Tr. 412, 418, 420, 422, 423.)  On October 4, 2011, Dr. Bernardi noted that her bone union was delayed.  Dr. Bernardi stated that "if she finds her residual symptoms sufficiently intolerable, then revision surgery might be an option for her. However, Ms. Smith understands quite clearly that the first hurdle she needs to cross regards her

---

[1] See Stedmans's Medical Dictionary 1812 (Tiffany Piper et al. eds., 28th ed. 2006).

tobacco use." (Tr. 424-25.) On June 6, 2012, Dr. Bernardi attributed plaintiff's reported back pain to a delayed union and failed fusion. (Tr. 418, 423.)

On October 16, 2011, plaintiff reported to Darryl Green, M.D. At the meeting plaintiff reported having diarrhea for the past ten to twelve months, with the course progressively worsening. "She estimates the stool frequency at three to four times a day." (Tr. 456.) Plaintiff requested a referral for a colonoscopy, and was referred to Dr. Michael Steele. (Tr. 458.)

On October 28, 2011, plaintiff began treatment with Dr. Steele. Plaintiff reported abdominal pain which improved with her bowel movements. Dr. Steele stated that, "[m]uch of her diarrhea may be due to depression and anxiety with irritable bowel and she may benefit from an anxiolytic [anti-anxiety medication] and low grade antidepressant." (Tr. 526.)

Dr. Steele performed a colonoscopy on plaintiff November 14, 2011, and reported she had "a spastic, mildly redundant colon with severe left sided diverticulosis and hemorrhoids [painful, swollen veins in the lower portion of the rectum]." (Tr. 532.) Several polyps were removed during this procedure. (Id.)

On November 29, 2011, plaintiff continued to report abdominal pain with diarrhea. Dr. Steele diagnosed plaintiff with gastritis (inflammation of the lining of the stomach), duodenitis (inflammation of the small intestine), irritable bowel syndrome and diarrhea. (Tr. 512.) Dr. Steele surgically removed plaintiff's gallbladder on December 8, 2011. (Tr. 514.) Dr. Steel reported "thickened gallbladder wall consistent with chronic cholecystitis [inflammation of the gallbladder]. No current sludge. There was some scarring in Calot's triangle." (Tr. 515). During a post operation report plaintiff reported no abdominal pain, and Dr. Steele noted good bowel sounds. (Tr. 517.) On December 19, 2011, plaintiff reported to Dr. Steele that she was having two to six bowel movements a day, and that her diarrhea had somewhat worsened after gallbladder surgery. (Tr. 506.)

On September 27, 2012, and December 6, 2012, plaintiff visited Dr. Steele. (Tr. 502, 498.) During both meetings plaintiff reported six to eight bowel movements per day. On the latter date Dr. Steele recommended plaintiff discontinue smoking. (Tr. 499.) Plaintiff reported having three to six bowel movements per day on December 20, 2012, two thirds of which are loose and watery. (Tr. 496.) On January 3, 2013, the last visit to Dr. Steele in the record, plaintiff reported having four bowel movements a day. (Tr. 488.) Plaintiff still reported urgency,

4

incontinence, and cramps. However, "her stools were improved and more formed and cramps were improved." (Tr. 489.)

**Mental Health**

On June 22, 2011 plaintiff was examined by Dr. Green, at Perryville Family Care Clinic for hypothyroidism, anxiety, and depression. Dr. Green noted plaintiff suffered from depression, anxiety and hypothyroidism, with both depression and anxiety being diagnosed at age 17. (Tr. 449-50.) Plaintiff reported to Dr. Green again on November 18, 2011. Concerning plaintiff's anxiety, Dr. Green reported that "the course has been rapidly worsening." (Tr. 456.) Dr. Green doubled plaintiff's dose of Xanax and Celexa to help combat her anxiety. (Tr. 458.) At plaintiff's next appointment, November 18, 2011, Dr. Green reported that plaintiff's anxiety had "been improved." (Tr. 459.)

On February 20, 2012, plaintiff met with Dr. Green, reporting anxious mood, crying spells, decreased ability to concentrate, fatigue, sadness, frustration, and irritability. (Tr. 462.) On March 27, 2012, plaintiff was examined Dr. Green, reporting several panic attacks a day. (Tr. 471.) Plaintiff was then referred to a psychiatrist for evaluation regarding anxiety and depression. (Tr. 473.)

On April 12, 2012, plaintiff saw Dr. Liss, who increased her dosage of Xanax. (Tr. 474)

On April 30, 2012, plaintiff reported to Dr. Green that her panic attacks occur nearly every day. Nevertheless, plaintiff told Dr. Green that "[s]he also started seeing a counselor and she states her Anxiety/Panic attacks are less and she feels better." (Id.)

On May 8, 2012 plaintiff began counseling at Perry County Memorial Hospital Counseling Center. Plaintiff reported "doing better", having an improved mood, and that her medications were working well. (Tr. 482.)

**ALJ Hearing**

On January 2, 2013, plaintiff appeared and testified to the following before an ALJ. (Tr. 541-72.) She is 42 years old and lives with her husband and two children; her husband is the only one who works in the household. (Tr. 546, 547, 550.) She last worked as a parts room secretary for a truck repair company. She reported she quit her job as a parts room secretary both because of back pain and because her boss had made sexual advances towards her. (Tr. 546.) Plaintiff testified her doctors "gave [her] a choice of have surgery or become paralyzed, and so [she] had the surgery." (Tr. 547.) She had back surgery in December 2010, but the pain

5

has continually worsened. (Id.) Plaintiff stated that that her doctors told her "the only thing [she] can do is to have surgery repeated again." (Id.) She has been prescribed pain medication following her spinal surgery. (Tr. 558.)

Plaintiff sometimes drives, can cook, and does light cleaning. (Tr. 550.) She is on anti-anxiety medicine because she has trouble going out in public. (Tr. 553.) She has to lay down three to five times a day for periods of twenty minutes to a couple hours. (Tr. 554.) Plaintiff cannot sit for more than ten minutes without having a problem, nor can she stand for longer than five minutes without difficulty. (Tr. 555.) She cannot lift anything heavier than a gallon of milk, and stated she has a pinched nerve in her neck which causes her right arm to go numb and drop items. (Tr. 555, 557.)

Crowds and public places cause plaintiff problems, and she suffers at least one panic attack a day. She has fallen as a result of her panic attacks. (Tr. 560.)

Vocational Expert (VE) Coffman testified that plaintiff had past relevant work (PRW) as a parts clerk, classified as heavy work; an assembler, classified as light work; a cashier, classified as light work; and a binding printer, classified as medium work. (Tr. 563.)

The ALJ posed hypothetical questions to the VE. The first hypothetical described a person of with plaintiff's age, education, and PRW who was limited to light work with the additional limitations that during the course of work duties she would be permitted to sit or stand to accommodate her in the performance of her tasks. Additionally, the hypothetical limited the work to no contact with the public and only occasional contact with co-workers. (Tr. 563-64.) The VE testified that plaintiff could perform her past job of assembly line worker with such limitations. (Tr. 564.) The VE also testified that there would be other assembly or production jobs available in the national economy. (Tr. 564-65.)

The second hypothetical question assumed the same limitations as the first, except the individual was limited to performing sedentary instead of light work. The VE testified that there would be work available in the national economy similar to plaintiff's past experience, including work as a circuit board assembler. (Tr. 565.)

The third hypothetical question described an individual similar to plaintiff in age, education and work experience "that was so limited by her impairments that it was impossible for this person to sustain any work activity in no matter how simple and non-strenuous for eight

6

hours a day, five days a week on a regular consistent basis." The VE testified that this individual would not be able to perform competitive work. (Tr. 566.)

### III. DECISION OF THE ALJ

On January 29, 2013, the ALJ issued a decision unfavorable to plaintiff. (Tr. 8-25.) The ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2012.

The ALJ found that plaintiff had not engaged in substantial gainful activity since April 13, 2007, the alleged onset date. (Tr. 13.) The ALJ found the plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine, generalized anxiety disorder, depressive disorder, and hypothyroidism. (Id.) The ALJ found that plaintiff did not suffer from an impairment or combination of impairments of a severity that meets or equals the required severity of a listed impairment. (Tr. 16-17.)

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform light work, with the limitation that the employment cannot require standing or sitting continuously without periodically alternating her position, and cannot require contact with the public or more than occasional interaction with supervisors or co-workers. (Tr. 17.) The ALJ found plaintiff's subjective complaints not credible when not supported or consistent with the clinical signs, symptoms, and findings of the objective medical evidence. (Tr. 19.)

The ALJ determined that the plaintiff was capable of performing her PRW as an assembler. This work was not precluded by her RFC. (Tr. 20.) Therefore, the ALJ found that plaintiff was not disabled, as defined by the Act. (Tr. 21.)

### IV. GENERAL LEGAL PRINCIPLES

When reviewing the Commissioner's decision, the court's role is to determine whether the decision is supported by substantial evidence in the record. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005). In determining whether evidence is substantial the court considers evidence that both supports and detracts from the ALJ's decision. Pate-Fires, 564 F.3d at 942. As long as substantial evidence exists in support of the ALJ's decision, the court may not reverse

because substantial evidence exists in support of a contradictory conclusion. Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to Social Security benefits a claimant must prove she is unable to perform substantial gainful activity due to a medically determinable impairment which would either result in death, or is expected to last for at least twelve continuous months. 42 U.S.C. §§ 423 (a)(1)(D), (d)(1)(A). It is the claimant's burden to prove that she is disabled. See Goff, 421 F.3d at 790. Further, an impairment which can be controlled by treatment or medication will not be considered disabling. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002). A five-step framework is used to determine whether an individual is disabled.

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii); see also Kelley v. Callahan, 133 F.3d 583, 587-88 (8th Cir. 1998). If the claimant does not suffer from a listed impairment, or its equivalent, the analysis proceeds to steps Four and Five. Step Four requires the ALJ to determine whether the claimant retains the RFC to perform her PRW. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant has the burden to demonstrate that she cannot perform her PRW. Pate-Fires, 564 F.3d at 942. If it is determined that the claimant can no longer perform her PRW, then the burden shifts to the Commissioner at Step Five to show that claimant retains an RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## V. DISCUSSION

Plaintiff argues, first, that the ALJ incorrectly determined that her irritable bowel syndrome, diverticulosis, and diarrhea (collectively "gastrointestinal impairments") were not severe. Plaintiff argues, second, that the ALJ's analysis of plaintiff's credibility was not supported by substantial evidence within the record. For the reasons set forth below, the court does not find merit in plaintiff's assertions, and as such finds no reason to disturb the ALJ's ruling.

## A. Severity

Plaintiff argues that the ALJ erred in determining that her gastrointestinal impairments were not severe. Plaintiff claims that the ALJ's broad statement that "all other documented impairments were minor or acute illnesses or injuries resulting in no significant long-term functional limitations or complications", (Tr. 20), painted too broad a stroke without support of substantial evidence within the record. In support, plaintiff cites diagnoses of IBS, diverticulosis, and bile salt diarrhea by plaintiff's treating physician, Dr. Steele.

At Step Two the claimant bears the burden of proving her impairment or combination of impairments is severe. However, the burden is not a rigorous one; any doubt concerning whether the showing has been made should be resolved in favor of the claimant. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless one." Id. An impairment is not severe if it amounts to only a slight abnormality and does not significantly restrict the claimant's ability to do basic work activities. Id. Under the Act "the ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples of basic work activities or aptitudes include: physical functions such as walking, standing, or sitting; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id. Factors to consider when making a severity determination include: correspondence with disability and past work. Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011) (a condition that was not disabling during working years and has not worsened cannot be used to prove present disability) (internal citations omitted); and the receptiveness to the impairment to treatment. Id. (because [plaintiff's impairments] are controllable and amendable to treatment, they do not support a finding of disability).

Plaintiff relies on Conner v. Astrue for the proposition that a case must be remanded where an ALJ fails to fully analyze the severity of a claimant's impairments. No. 09-CV-04224-NKL, 2010 U.S. Dist. WL 2775132 (W.D. Mo. July 12, 2010); (Pl.'s Br. 8.) Conner involved an ALJ opinion in which severity determinations could only be found implicitly. Id. The Conner court refused to "read into the ALJ's opinion implicit statements about the severity of Conner's

alleged impairments, a required step in the process." Id. The ALJ's decision in the present case makes explicit severity determinations, supported by relevant portions of the medical record. (Tr. 13-16.) After analyzing the record and explicitly finding some impairments severe the ALJ determined, "all other documented impairments were minor or acute illnesses or injuries resulting in no significant long-term functional limitations or complications." (Tr. 20.) This statement explicitly asserts that plaintiff's "other documented impairments" (including her gastrointestinal impairments) were not severe. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). Unlike Conner, there is no need to "read into" the ALJ's opinion in the present case.

The plaintiff cites medical records which diagnose her with diarrhea, IBS, and diverticulosis for the proposition that these diagnoses demonstrate severity. However, a diagnosis does not necessitate a determination of severity as defined above. The conclusion of the ALJ's ruling was that plaintiff's "other documented impairments" did not prevent her from performing basic work activities. The record indicates that, in the past, plaintiff has had bowel movements as many as eight times per day. (Tr. 489.) However, at her last reported appointment plaintiff was reporting four bowels per day. (Tr. 488.) The ALJ's necessary premise is that having diarrhea four times a day does not restrict plaintiff's ability to do basic work activities. Furthermore, plaintiff fails to demonstrate how this impairment would limit her basic work abilities

Plaintiff had originally been diagnosed with diverticulosis and spastic upper and lower gastrointestinal tract when she was 17. (Tr. 524.) Despite this diagnosis plaintiff was gainfully employed between 1990 and 2007. (Tr. 131.) Nothing in the record indicates plaintiff had difficulty at her PRW due to her gastrointestinal issues. In fact she cited only back pain and sexual advances by her superior as reasons of quitting her last job, in 2007. (Tr. 546.) As mentioned above, "a condition that was not disabling during working years and has not worsened cannot be used to prove present disability." Martise, 641 F.3d at 924.

For the reasons stated above, the ALJ's determination that plaintiff's gastrointestinal impairments were not severe is supported by substantial evidence in the record.

## B. Credibility

Plaintiff also contends that the ALJ's credibility analysis was not supported by substantial evidence in the record. Plaintiff argues that the ALJ failed to properly consider her daily activities when assessing her credibility. Specifically, plaintiff contests the ALJ's determination that plaintiff can, "live and function independently, provide care for her children, cook, perform light household chores, go grocery shopping, and drive an automobile." (Pl.'s Br. 11), (Tr. 19.) This finding is consistent with her testimony regarding her daily activities. Plaintiff testified she cooks, (Tr. 550, 551), drives, (Tr. 550), and takes care of her children, (Tr. 550, 551); and, although initially when asked if she cleans the house plaintiff responded "no", after further questions the plaintiff stated, "I do the *light* stuff" and "I try doing stuff that needs to be done, the *light* housekeeping." (Tr. 551) (emphasis added). Therefore, nothing is inconsistent between the ALJ's findings and the plaintiff's testimony.

Plaintiff further claims that, even if the ALJ's characterization of her activities is accurate, these activities are consistent with her disability claim. To support this, plaintiff claims that the ALJ's credibility analysis concerning the extent of her subjective impairments was inaccurate. (Pl.'s Br. 12.) Plaintiff contends that, if the ALJ's credibility analysis were proper, a more appropriate RFC would have been given.

The Eighth Circuit has held that, "when assessing the credibility of a claimant's subjective allegations of pain, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir. 1998). "Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." Halverson v. Astrue, 600 F.3d 922, 931-32 (8th Cir. 2010) (internal citations omitted). An ALJ "need not explicitly discuss each factor mentioned above." Goff, 421 F.3d at 791. Further, "[the] ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole." Id. at 785. Finally, courts are to defer to ALJ's credibility determination when such a finding is substantiated by the record. Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002).

The ALJ considered the factors mentioned above and determined that plaintiff's subjective complaints were not credible. (Tr. 18, 19.) First, the ALJ explicitly found that plaintiff's, "daily activities are inconsistent with [her] allegations of disabling symptoms and limitations." (Tr. 19.) Plaintiff and defendant both cite cases in which a claimant who suffers similar impairments as plaintiff were either denied or granted disability benefits under the Act. However, it is not for this court to determine exactly where the line is, but to determine whether the ALJ's decision was supported by substantial evidence in the record. The court is also aware that the ALJ is in the best position to make such a credibility determination, and deference is owed to the ALJ when such a finding is substantiated by the record. Ramirez, 292 F.3d at 581.

The ALJ determined that the severity of plaintiff's subjective complaints is not supported or consistent with objective medical evidence. (Tr. 19.) Plaintiff takes exception to the ALJ's statement that, "if the claimant's need to lie down was impairing her ability to function to the degree alleged, it is reasonable to assume this would be annotated in the medical records." (Id.) Plaintiff is correct in noting that an ALJ is not allowed draw upon her own inferences from the medical records. (Pl.'s Br. 12.); Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000) (internal citations omitted). However, as mentioned above, a lack of objective medical evidence is a factor to be considered when assessing a claimant's subjective complaints. Halverson, 600 F.3d at 931-32.

Plaintiff takes exception to the ALJ's assumption that a need to lie down would be in the medical record, (Tr. 19), because, "Dr. Bernardi specifically indicated that Smith's symptoms were 'markedly interfering' (Tr. 422), with her activities and that she could not sit or walk for any length of time." (Pl.'s Br. 12.) If Dr. Bernardi made an objective determination of plaintiff's symptoms then it would be clear that the ALJ was incorrect in determining credibility based, in part, on the of a lack of objective evidence. However, these complaints were relayed from plaintiff to Dr. Berndardi. Dr. Bernardi's report states: "[plaintiff] says her residual symptoms markedly interfere with her activities. She cannot sit or walk for any length of time. She can only do limited housework. She can walk about eight minutes on a treadmill before she has to stop." (Tr. 422.) A patient's self-reported history, incorporated into a report, is not objective medical evidence. See Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995). Thus, the ALJ lawfully considered the lack of objective medical evidence when analyzing

plaintiff's credibility. Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) (lack of objective medical evidence is a factor an ALJ may consider when assessing credibility).

In considering plaintiff's subjective complaints of pain, the ALJ lawfully considered whether medication was effective in regulating her symptoms. He found no evidence suggesting that plaintiff's pain medication was not generally effective. (Tr. 19.) In regards to plaintiff's mental impairments, the ALJ found that they were, "generally controlled by the primary care physician with prescribed psychotropic medication therapy." (Tr. 19, 339.) When an ALJ is assessing credibility of subjective complaints effectiveness of medication is a factor to consider. Kelley, 133 F.3d at 588.

An ALJ may disbelieve claimant's subjective illnesses if there are inconsistencies in the record as a whole. Goff, 421 F.3d at 792. In her testimony before the ALJ, plaintiff departed from the treatment reports within the record. Plaintiff testified that her doctors advised her that the only thing that she can do to alleviate her pain is have a second spinal surgery. (Tr. 547, 557.) However, Dr. Bernardi's final patient note states that, if certain prerequisites are met, "surgery *might* be an option for her." (Tr. 425) (emphasis added). Nowhere in the record does Dr. Bernardi indicate that surgery is the only option, in fact Dr. Bernardi frequently recommends plaintiff to quit smoking, as that is a known cause for developing a nonunion. (Tr. 339.)

Plaintiff's testimony that expense was the only thing preventing further surgery discounts Dr. Bernardi's notes urging her to stop smoking ("[she] understands quite clearly that the first hurdle she needs to cross regards her tobacco use.") (Tr. 447, 425.)

Finally, the ALJ properly considered the plaintiff's work record. He noted that she had a good work history, "but this alone will not support her allegation of disability." (Tr. 12.) Plaintiff is correct that her work record can support her credibility. However, her work history does not require a finding of disability. And the fact that plaintiff quit her last job because of sexual advances, as well as back pain, is relevant to her credibility about whether she could do that work. Goff, 421 F.3d at 793 ("[c]ourts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition").

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/S/ David D. Noce  
**UNITED STATES MAGISTRATE JUDGE**

Signed on November 17, 2014.